UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TINA M. VASQUEZ,

        Plaintiff,

     v.

BANK OF AMERICA , N.A., et al.,

        Defendants.

Case No. 13-cv-02902-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: ECF No. 15

## I.    INTRODUCTION

       Defendants Bank of America, N.A. ("BANA") and Bank of New York Mellon ("BNYM") jointly move to dismiss Plaintiff Tina Vazquez's ("Plaintiff") First Amended Complaint ("FAC"), in which Plaintiff challenges Defendants' actions in proceeding towards foreclosure of her home. "Mot.," ECF No. 15. The Court has considered the arguments of the parties in their papers and at the oral argument held on October 21, 2013.

## II.    BACKGROUND

###     A.    Factual Background[1]

---

[1] Since this is a motion to dismiss, the Court accepts the facts from Plaintiff's First Amended Complaint as true. See Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008). The Court also GRANTS Defendants' Request for Judicial Notice ("RJN") of the Notice of Trustee's Sale of Plaintiff's home, dated May 13, 2013 and recorded in the Official Records of the Recorder of Office of Alameda County, California, on May 21, 2013. ECF No. 16. "A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). The FAC refers extensively to the Notice of Trustee's Sale, and the appropriately noticeable facts it documents can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The copy of the notice submitted by Defendants bears the stamp of the Official Records of Alameda County, and Plaintiff

United States District Court
Northern District of California

1  Plaintiff lives in and owns a property in Hayward, California, on which she obtained a loan

2  around June 1, 2005.  FAC, ECF No. 13, ¶¶ 4, 10.  Subsequently, Defendant BNYM acquired the

3  loan and Defendant BANA became the servicer of the loan.  FAC ¶ 10.  Plaintiff timely made her

4  monthly payments each month between June 1, 2005 and August 2011.  FAC ¶ 11.

5  In or around August 2011, Plaintiff called a BANA number and spoke to an individual

6  who identified herself as Plaintiff's customer relationship manager.  FAC ¶ 12.  The representative

7  told Plaintiff that she was qualified for a modification of her home loan, but also told Plaintiff that

8  the only way to receive a loan modification was to be at least sixty days delinquent on her

9  payments.  Id.  The FAC explains:

> Plaintiff expressed concern about missing payments, and the
> representative responded that BANK OF AMERICA was not
> supposed to tell borrowers this, but it was Defendants' policy to
> inform borrowers to miss payments for at least sixty days, and then
> they could qualify for a modification.  Plaintiff inquired about the
> effect missed payments would have on her credit and BANK OF
> AMERICA'S representative informed Plaintiff that it was BANK
> OF AMERICA'S policy to not report Plaintiff's delinquency to
> credit agencies if the borrower was missing payments in order to
> receive a modification.    Instead, BANK OF AMERICA'S
> representative told Plaintiff that it would refrain from reporting
> Plaintiff's account status at all to credit agencies while Plaintiff was
> being reviewed for a modification.  Plaintiff also learned that BANK
> OF AMERICA would not initiate foreclosure proceedings against
> Plaintiff's property while she was being reviewed for a
> modification.  Therefore, in reliance on BANK OF AMERICA'S

does not contest its accuracy.

Defendants do, however, contest the noticeability of the document Plaintiff has submitted in her
Request for Judicial Notice.  ECF Nos. 19 & 21.  (Plaintiff's request for judicial notice is entitled
"Request for Judicial Notice in Support of Cross-Defendant's Special Anti-SLAPP Motion to
Strike Cross-Complaint," which the Court assumes is an error.)  The document is described as a
"Deed of Trust, dated June 1, 2005, and recorded in the Official Records, Recorder Office of
Alameda County, California, on June 22, 2005," but it nowhere bears a seal or identifying marks
indicating that it has been maintained as a public record, and therefore the document's source is
not one whose accuracy cannot reasonably be questioned.  It would also be inappropriate to take
notice of the document for the truth of the disputed facts contained within the document, which
appears to be Plaintiff's purpose in seeking notice.  See Lee v. City of Los Angeles, 250 F.3d 668,
688-90 (9th Cir. 2001); see also Opp. 14:17-18.  Plaintiff's Request for Judicial Notice is therefore
DENIED.

United States District Court
Northern District of California

statements, Plaintiff did not make her September 2011 payment.
Id.  Plaintiff spoke to another BANA representative to in November 2011, who told her to become even more delinquent in her payments before applying for a loan modification, and to call back the following month to request a modification.  Id., ¶ 13.  In December 2011, Plaintiff completed and submitted a loan modification application.  Id., ¶ 14.  In or around February 2012, another BANA representative advised Plaintiff that in order to receive a loan modification, she should discharge some debt and solicit a roommate to raise her income.  Id.

Plaintiff filed for bankruptcy in March 2012, discharged approximately $66,000 in debt in or around June 2012, and found a roommate to pay approximately $1,000 in monthly rent.  FAC ¶ 14.  Plaintiff again requested a loan modification in July 2012, and received a July 25 letter from BANA that her application was complete.  FAC ¶ 15.  Two days later, on July 27, 2012, Plaintiff received a letter indicating that her modification was denied because Plaintiff did not complete and submit all of the documents BANK OF AMERICA requested."  Id.  Plaintiff contacted BANA, who told her that the denial was sent in error but that she would need to submit a new modification, which she did.  Id.  "Between July 2012 and March 2013, Plaintiff continued to submit and re-submit countless documents to BANK OF AMERICA in pursuit of a loan modification," without receiving any status update.  FAC ¶ 16.  On or around February 11, 2013, Plaintiff received a Notice of Default.  FAC ¶ 17.  Plaintiff contacted BANA, and when she was unable to speak with anyone, she continued to wait for a determination on her application.  Id.

On or around April 6, 2013, Plaintiff was informed that she had been assigned a single point of contact, an individual named Michelle Harrold who promised to work with her through the remainder of the loan modification process.  FAC ¶ 18.  Around this same time, another individual purporting to be a representative of BANA told Plaintiff that she did not qualify for a modification.  Id.  Plaintiff advised Harrold of this, and also told Harrold that she had obtained a new job and that her monthly salary had increased by approximately $2,400.  Id.  Harrold advised Plaintiff to resubmit a new loan modification application, which Plaintiff did on or around May 13, including documentation of her increased income, which Harrold confirmed receiving.  Id.

On May 22, the day after Harrold confirmed to Plaintiff that her documents had been

received and were being reviewed, Plaintiff received a written denial of her modification application, dated May 20, 2013.  Id.  The same day, Plaintiff received a Notice of Trustee's Sale of her home, dated May 13, 2013 and recorded in the Official Records of the Recorder of Office of Alameda County, California on May 21, 2013.  Exh. A to Defts' RJN, ECF No. 16-1; FAC, ¶ 18.  The sale was noticed for June 13, 2013.  Exh. A to Defts' RJN.

### B.    Procedural History

Plaintiff filed the initial complaint in this action against Defendant BANA and Does 1-50.  ECF No. 1.  In response to BANA's motion to dismiss, Plaintiff filed the FAC, which added BNYM as a defendant and brought causes of action for: (1) violation of California Civil Code Section 2923.6, (2) violation of California Civil Code Section 2924 *et seq.*, (3) violation of the federal Equal Credit Opportunity Act ("ECOA"), 11 U.S.C. § 1691, (4) breach of the implied covenant of good faith and fair dealing, (5) promissory estoppel, (6) fraud, (7) negligent misrepresentation, and (8) violation of California's Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code § 17200 *et seq.*  BANA withdrew its first motion to dismiss, and both Defendants then filed a joint motion to dismiss the FAC, which the Court now considers.

### C.    Legal Standard

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir.2008).  Dismissal is also proper where the complaint alleges facts that demonstrate that the complaint is barred as a matter of law.  See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1990); Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir.1980).

For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir.1996).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

United States District Court
Northern District of California

4

1    formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly,

2    550 U.S. 544, 555 (2007). To survive a motion to dismiss, a pleading must allege "enough fact to

3    raise a reasonable expectation that discovery will reveal evidence" to support the allegations. Id.

4    at 556.

5         **D.    Jurisdiction**

6         In the portion of the FAC addressing subject-matter jurisdiction, Plaintiff invokes only

7    federal-question jurisdiction, since the FAC alleges a violation of a federal statute, ECOA.  FAC,

8    ¶ 2.  However, in her opposition brief, Plaintiff argues that diversity jurisdiction also applies to

9    this action since both Defendants are citizens of states other than Plaintiff.  Plaintiff's Opposition

10   ("Opp."), ECF No. 18, at 19:4-20.  Ordinarily, "the complaint may not be amended by briefs in

11   opposition to a motion to dismiss." Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1145 (N.D. Cal.

12   2010) (internal quotation omitted).  And also ordinarily, the Court would not exercise

13   supplemental jurisdiction over state-law claims without first determining whether a plaintiff has a

14   viable federal claim. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, n. 7 (1988).

15   However, given the apparent complete diversity of the parties in this case, to avoid the expense

16   and time of unnecessary motion practice, this Court ordered Defendants to file a supplemental

17   brief "identifying the state or states of which Defendants are citizens, and stating whether

18   Defendants dispute that diversity jurisdiction applies to the entire complaint." ECF No. 23, at

19   2:12.

20        Defendants' counsel responded by filing a supplemental statement which failed completely

21   to address the sole question posed by the Court's order.  Defendants' Supplemental Reply re:

22   Jurisdiction ("Suppl. Reply"), ECF No. 24.  Defendants did not argue that the Court lacked the

23   authority to issue the order; instead, they pointed out a fact the Court was already aware of: that

24   Plaintiff failed to assert diversity jurisdiction in her complaint.  Defendants provided no

25   information regarding their state citizenship.

26        The Defendants' response was puzzling, because the information the Court sought was not

27   difficult to obtain.  Notably, when these same Defendants seek to *remove* cases to federal court,

28

5

United States District Court
Northern District of California

1    they are more forthcoming with this information.  In numerous cases filed in this court, BANA has

2    asserted that it is a citizen of the state of North Carolina.  See, e.g., Notice of Removal ¶ 7,

3    Pantoja v. Bank of America, No. 3:12-cv-00268-RS (N.D. Cal. Jan. 19, 2011); Notice of Removal

4    ¶ 6, Ravan v. Bank of America, No. 3:13-cv-02902-JST (N.D. Cal. May 3, 2011).[2]  (Defendants'

5    counsel in this case was counsel of record for BANA in the aforementioned cases.)  Likewise,

6    BNYM has asserted New York and Delaware citizenship in Notices of Removal filed in this court.

7    Notice of Removal ¶ 12, Britto v. Bank of America, N.A., No. 13-cv-3508-WHA (N.D. Cal. July

8    30, 2013); Notice of Removal ¶ 7, Campos v. Bank of America, Inc., No. 4:11-cv-00431-SBA

9    (N.D. Cal. Jan. 28, 2011).  (Defendants' counsel's firm was counsel of record in Britto, and also

10   again asserted BANA's North Carolina citizenship in that case.  Notice of Removal ¶ 10.)  In

11   cases filed in other courts, BNYM has also asserted that is only a citizen of New York.  See Notice

12   of Removal 3, Fillman v. Bank of New York Mellon, No. 4:13-cv-02601 (S.D. Tex. Sep. 4, 2013);

13   Notice of Removal ¶ 8, Sharp v. Bank of America, No. 0:12-cv-02610-MJD-SER (D. Minn. Oct.

14   11, 2012) ("[f]or purposes of diversity, Bank of New York is a citizen of New York").  The Court

15   has found no filings in which either Defendant asserted California citizenship – the fact of which

16   would be necessary to defeat diversity jurisdiction in this case – and at oral argument Defendants'

17   counsel conceded that neither Defendant is a citizen of California.

18        Defendants' motion, and their supplemental statement, argues that it would be

19   inappropriate for the Court to assume supplemental jurisdiction over Plaintiff's state-law claims.

20   Mot. 22:21-23:8; Suppl. Reply 4:3-5.[3]  But that is their secondary position.  Defendants' first

21   choice is to have the Court dismiss the entire complaint with prejudice.  Mot. 1:17; Suppl. Reply

22   _____

23   [2] See also Notice of Removal from State Court ¶ 13, Vespi v. Mortgage Elec. Registration Sys.,
     Inc., No. 1:12-CV-858 (W.D. Mich. Aug. 16, 2012); Notice of Removal 2-3, Mason v. Bank of

24   America, No. 4:12-cv-00291-RAS-DDB (E.D. Tex. May 11, 2012); Notice of Removal ¶ 4,
     Schultz v. BAC Home Loans Servicing LP, Case 2:11-cv-00558-NVW (D. Ariz. Mar. 25, 2011).

25   [3] Defendants' counsel, when removing cases to federal court on the basis of federal question

26   jurisdiction, has several times asserted that courts of this district should exercise supplemental
     jurisdiction over state-law claims.  Notice of Removal ¶ 4, Brothers v. Bank of America, N.A.,

27   No. 5:12-cv-03121-EJD (June 18, 2012).  Notice of Removal ¶ 7, Kennedy v. Bank of America,
     N.A., No. 4:12-cv-00952-YGR (Feb. 27, 2012).

28

4:2-4.  Without exercising supplemental jurisdiction, the Court could only proceed to consider all claims in the complaint if diversity jurisdiction applies.  Defendants' suggestion is that if the Court intends to rule their way, it should assume jurisdiction, but that if it does not, it should not.

That, it should go without saying, is not how law practice in federal court works.  State citizenship, and the federal court jurisdiction upon which it depends, is not something one asserts or hides depending upon the convenience of the client.  The Court either has jurisdiction over the entire complaint, or it does not.  And Defendants either have state citizenship which is diverse from Plaintiff's, or they do not.

It is not clear what Defendants' counsel thought he might be accomplishing by not disclosing the state citizenship his clients have repeatedly asserted to other federal courts.  The net effect, however, is that the Court itself had to do the work to uncover what seems obvious and indisputable: that Defendants' state citizenships are diverse from Plaintiff's.  It also appears that the amount in controversy exceeds $75,000, since both the amount of indebtedness – and probably the market value of the home – exceed that threshold.  See Exh. A to RJN; see also Ngoc Nguyen v. Wells Fargo Bank, N.A., 749 F. Supp. 2d 1022, 1028-29 (N.D. Cal. 2010) (discussing various tests applied by courts in this district for determining the amount in controversy requirement in foreclosure cases).  The Court therefore concludes that it has subject matter jurisdiction over the entire complaint pursuant to 28 U.S.C. § 1332.

The Court does agree that it is Plaintiff's responsibility to validly assert the appropriate jurisdiction in the operative complaint.  Since the Court will dismiss the complaint without prejudice, Plaintiff must include adequate jurisdictional allegations in any amended complaint.  Defendants can, of course, bring any challenge to that asserted jurisdiction at any time, and the Court remains mindful of its own sua sponte obligation to satisfy itself of its jurisdiction.

## III.    ANALYSIS

Defendants move to dismiss on the grounds that the entire complaint should be dismissed as insufficient under Rule 8 of the Federal Rules of Civil Procedure, and also on the grounds that each of the specific causes of action fail to state a claim upon which relief may be granted.

7

**A.   Rule 8**

Defendants contend that the FAC should be dismissed for failing to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Rule 8 of the Federal Rules of Civil Procedure.  In their motion, Defendants state that "Plaintiff asserts all eight claims broadly against 'all Defendants' with no attempt to identify the specific conduct of each individually."  This statement is inaccurate; Plaintiff specifically states in the FAC that she brings her third, sixth and seventh causes of action only against BANA, and brings the remaining causes of action against both Defendants.  FAC ¶¶ 20, 28, 34, 40, 49, 58, 63, 72.

This misstatement aside, Plaintiffs cite only two district court opinions as authority for their argument that Rule 8 requires dismissal of the FAC.  In one, the complaint was "a sprawling, prolix and incoherent jumbling of allegations and legal conclusions" brought against fifteen different companies.  McNeil v. Home Budget Loans, No. CV 09-7588 ODW AJWX, 2010 WL 1999580, at *1 (C.D. Cal. May 13, 2010).  This provides little support for dismissal of Plaintiff's generally intelligible complaint against just two defendants.

In the second case, a plaintiff brought an action under 42 U.S.C. sections 1981 and 1983, which require a plaintiff to plead that a defendant acted "under color of state law" to deprive the plaintiff of "a right, privilege or immunity secured by the Constitution, treaty or laws of the United States."  Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).  Plaintiff Gauvin brought his action against several government actors, but also against nine private defendants, without "stat[ing] with any specificity how each private defendant allegedly deprived him of a right secured by the Constitution or laws of the United States."  Id.  "Instead, all defendants [were] lumped together in a single, broad allegation."  Id.  Gauvin stands for the proposition that private defendants cannot, without explanation, be lumped in with government actors in a Section 1983 action.  That case does not support dismissal here.

Plaintiffs allege that Defendant BANA is the servicer for the loan owned by Defendant BNYM, and that both defendants are jointly liable under the joint causes of action under agency

United States District Court
Northern District of California

1   principles.  FAC ¶¶ 8-9.[5]  In their reply, Defendants argue that this is insufficient to plead a claim

2   against both Defendants under Rule 8 because Plaintiffs have not specifically pled every element

3   of a legal agency relationship between Defendants.  The only case Defendants cite as "precedent"

4   for this requirement is a district court case holding that "where a plaintiff alleges that a defendant

5   is *liable for fraud* under an agency theory, *Rule 9(b)* requires that the existence of the agency

6   relationship be pled with particularity."  Jackson v. Fischer, 931 F. Supp. 2d 1049, 1061 (N.D.

7   Cal. 2013) (emphases added).  The Jackson court was applying Rule 9(b)'s heightened pleading

8   standards, not Rule 8's general pleading requirements.  The Court addresses the requirements of

9   Rule 9(b) *infra* at Parts III-H-1 and III-I-4, but these requirements only apply to some of Plaintiff's

10  claims, only one of which is brought against both Defendants.[6]

11          Given the allegation that BANA is the servicer of a loan owned by BNYM, it is plausible

12  to infer from the facts of the FAC that Defendants could be liable for the foreclosure, contractual

13  and UCL claims that Plaintiff brings against both Defendants.  Defendants are reasonably on

14  notice of the claims against them.  That is all Rule 8 requires.

15          **B.      California Civil Code Section 2923.6**

16          Plaintiff's first cause of action is for violation of California Civil Code Section 2923.6.[7]

17  The current version of Section 2923.6(c) provides, *inter alia*, that "[i]f a borrower submits a

18  complete application for a first lien loan modification offered by, or through, the borrower's

19  mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall

20  not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first

21  lien loan modification application is pending."  That subsection goes on to state that a servicer

22  "shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the

23  following occurs:  (1) The mortgage servicer makes a written determination that the borrower is

24  not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has

---

[5] These two adjacent paragraphs are identical.

[6] The claim is the claim under the 'fraudulent' prong of the UCL.  See Part III-I, *infra*.

[7] All statutory references in this and the following section are to sections of the California Civil Code.

United States District Court
Northern District of California

expired; (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer; (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification." Id. Subsection (d)'s appeal period states that "the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error."

Plaintiff maintains that Defendants violated this statute when BANA recorded the February 2013 Notice of Default while in possession of her complete loan modification application, and that they further violated the statute by recording the May 21, 2013 Notice of Trustee's Sale before the 30-day period to appeal her later denial had lapsed. FAC, ¶¶ 25-26.

### 1. Existence of a Private Right of Action under 2923.6

Defendants state flatly that "[t]here is no private right of action under Cal. Civ. Code § 2923.6." Their primary authority is Pfeifer v. Countrywide Home Loans, Inc., in which the Court of Appeal stated in a footnote that, "to the extent that [the borrowers in that case] are seeking any damages . . . [they] have no private right of action under Civil Code section 2923.6, and this statute does not require loan services to modify loans." 211 Cal. App. 4th 1250, 1282, n. 17 (2012), review denied (Feb. 20, 2013). They also cite numerous district court decisions holding similarly.

The problem with Defendants' argument is that those cases are discussing a different law. At the time Pfeiffer was decided, Section 2923.6 only contained its first two subsections, which "merely express[] the *hope* that lenders will offer loan modifications on certain terms." Mabry v. Superior Court, 185 Cal. App. 4th 208, 222 (2010).

In January 1, 2013, the California Homeowners' Bill of Rights ("HBOR") took effect. Ch. 86, Stats. 2012. That act added subsections c through k to Section 2923.6, including the two subsections Plaintiff invokes in the FAC. Id., § 7. In holding that there is no private right of action under "Section 2923.6," Pfeiffer could only have been referring to the first two provisions of the section, and not to subsection c and d's specific requirements regarding dual-tracking.

United States District Court
Northern District of California

United States District Court
Northern District of California

Pfeiffer and the other pre-HBOR cases cited by Defendants discussing the defunct version of 2923.6 have little, if any, applicability to subsections c through k of the now-applicable law.

Perhaps even more importantly, HBOR also added Section 2924.12 to the California Civil Code. Id., § 14. Section 2924.12 expressly provides that borrowers may bring an action based on a violation of the new Section 2923.6, the remedies for which depend upon whether a trustee's deed has or has not been recorded:

> (a)  (1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.
>
> (2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.
>
> (b)  After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

Cal. Civ. Code § 2924.12. The FAC does not indicate whether or not a Trustee's Deed has been recorded on the subject property. The Trustee's Sale was noticed for June 2013, but at oral argument counsel stated that the sale has not taken place.

To the extent that Defendants merely seek to cabin Plaintiff's remedies to the appropriate portion of Section 2924.12, see Reply 3:6-11, the Court confirms that Plaintiff may not seek remedies under Section 2924.12 that do not apply to the present status of the property. For

1   example, if no trustee's deed upon sale has been recorded, Plaintiff's claims in FAC ¶ 27 for

2   actual damages, attorneys' fees, and treble damages are unavailable until such time as the deed

3   upon sale has been recorded.

4         But if Defendants contend, in arguing that "there is no private right of action" under

5   Section 2923.6, that its post-HBOR provisions are unenforceable, the Court rejects that argument,

6   since it is based on now inapplicable legal rulings.  Defendants cite no case interpreting the current

7   version of Section 2923.6 in light of the new Section 2924.12.  In the only 2013 case Defendants

8   cite in their motion holding that there is no private right of action under Section 2923.6, <u>Homsy v.</u>

9   <u>Bank of Am., N.A.</u>, the Notice of Default and Trustee's sale were recorded in 2012, when the old

10  Section 2923.6 was in effect and when Section 2924.12 was not yet law.  No. C 13-01608 LB,

11  2013 WL 2422781, at *1-3, *6 (N.D. Cal. June 3, 2013).[8]  (There is no indication that HBOR has

12  retroactive effect.  <u>See</u> <u>Michael J. Weber Living Trust v. Wells Fargo Bank, N.A.</u>, 13-CV-00542-

13  JST, 2013 WL 1196959, at *4 (N.D. Cal. Mar. 25, 2013).)

14        The relevant facts of this case -- the recordation of the Notice of Default and the Notice of

15  Trustee's Sale -- occurred in 2013, under the now-current text of Section 2923.6, and under the

16  explicit borrower right of action provisions in the new Section 2924.12.  Defendants' arguments

17  and authority regarding the nonexistence of a private right of action do not demonstrate that

18  Plaintiff may not seek appropriate relief under Section 2924.12.

19              **2.**        **Section 2923.6(g)**

20        Defendants invoke another subsection of the same post-HBOR section and argue that it

21  bars Plaintiff's claim.  Section 2923.6(g) provides:

22              In order to minimize the risk of borrowers submitting multiple

23              applications for first lien loan modifications for the purpose of
            delay, the mortgage servicer shall not be obligated to evaluate

24              applications from borrowers who have already been evaluated or

25

26  [8] In their reply brief, they cite another: <u>Pitre v. Wells Fargo Bank, N.A. Mortgage Servicer</u>, No. C
13-00552 WHA, 2013 WL 2156315 (N.D. Cal. May 17, 2013).  That case also involved 2012 acts,

27  and the court was clearly discussing Section 2923.6's pre-HBOR provisions.  <u>See</u> 2013 WL
2156315, at *3.

28

United States District Court
Northern District of California

afforded a fair opportunity to be evaluated for a first lien loan
modification prior to January 1, 2013, or who have been evaluated
or afforded a fair opportunity to be evaluated consistent with the
requirements of this section, unless there has been a material change
in the borrower's financial circumstances since the date of the
borrower's previous application and that change is documented by
the borrower and submitted to the mortgage servicer.

Plaintiff claims BANA violated Section 2923.6(c) twice: first, when BANA recorded the
February 2013 Notice of Default while in possession of a completed modification application, and
second, when recording the May 21, 2013 Notice of Trustee's Sale before the 30-day period to
appeal BANA's later denial had lapsed.  FAC ¶¶ 25-26.

Plaintiff has validly pled her claim that the posted May 21, 2013 notice violated Section
2923.6.  Plaintiff has alleged that, after gaining new employment with a higher income, she spoke
to BANA representative Michelle Harrold, and at Ms. Harrold's request submitted a new loan
modification application, "including documentation of her increased income, on or around May
13, 2013 and on May 21, 2013, Plaintiff spoke with Harrold who confirmed that all documents
had been received and were in the process of being reviewed."  FAC ¶ 18.  Defendants offer no
authority in support of their argument that these allegations, which must be deemed true on a
motion to dismiss, do not qualify as sufficient to meet Section 2923.6(g)'s requirements that a
borrower document and submit to the servicer a "material change in the borrower's financial
circumstances."[9]

Instead, Defendants suggest that "Plaintiff is required to specifically plead which section of
the Cal. Civ. Code that provides her with a statutory right to appeal an adverse loan modification
decision."  Mot. 4:27-28.  That is not Plaintiff's claim.  She claims that Defendant was prohibited
by Section 2923.6(c) and (d) from noticing a trustee's sale during the 30-day period following a

---

[9] Defendants claim that Plaintiff "has not alleged that she provided BANA with any documented
material change in her financial circumstances," says that she submitted only "verbal
representations," and states that she "fails to allege any facts indicating that Defendants were or
could have been aware of Plaintiff's purported alleged material change noticed prior to April
2013."  Reply 5:23-6:2.  This response seems to ignore Plaintiff's allegation that she submitted
documentation of the new income to BANA and that BANA confirmed receiving it.  FAC ¶ 18.

1    denial during which Plaintiff *could have* made such appeal.  That claim is sufficiently pled.

2         As for the February 23 Notice of Default, that is a closer question.  Plaintiff alleges that

3    she received a letter from BANA in July 2012 denying her first loan modification application.

4    FAC ¶ 15.  Therefore, she would normally be required to demonstrate that she both documented

5    and submitted a material change in her financial circumstances to BANA before claiming that a

6    subsequent application precluded BANA from recording a Notice of Default.

7         However, Plaintiff has also alleged that a BANA representative told her immediately after

8    the July 2012 denial that the letter had been in error.  FAC, ¶ 15.  Plaintiff also argues that, even if

9    BANA was not "obligated" by the law to evaluate her post-July 2012 loan modification

10   application, they undertook to do so anyway, and therefore became obligated to follow the

11   requirements of Section 2923.6(c).  At least on a motion to dismiss, when all inferences are

12   resolved in Plaintiff's favor, Defendants have failed to meet their burden of showing that that

13   claim fails as a matter of law.

14        **D.    Wrongful Foreclosure**

15        Plaintiff's second cause of action is for violation of California Civil Code § 2924 *et seq*.,

16   California "wrongful foreclosure" statute.  These California Civil Code sections "govern

17   nonjudicial foreclosure sales pursuant to a power of sale contained in a deed of trust."  <u>Biancalana</u>

18   <u>v. T.D. Serv. Co.</u>, 56 Cal. 4th 807, 813 (2013).  "The purposes of this comprehensive scheme are

19   threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy

20   against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the

21   property; and (3) to ensure that a properly conducted sale is final between the parties and

22   conclusive as to a bona fide purchaser."  <u>Id.</u> at 830 (<u>quoting</u> <u>Moeller v. Lien</u> 25 Cal.App.4th 822,

23   830 (1994)).  Plaintiff claims that she has a claim under the wrongful foreclosure statute since "she

24   was not in breach of the loan agreement" because Defendants' agents told her to miss payments,

25   since the Notice of Default included fees Defendants had waived under California Civil Code §

26   1511 by inducing her not to perform, and since the nature of the alleged breach was not known to

27   the beneficiary as required by Section 2924a(1)(C).  FAC, ¶¶ 30-32.

28

United States District Court
Northern District of California

14

1       Defendants maintain that there is no private right of action under this statute.  It is true that

2  there is no specific right of action provision, analogous to Section 2924.12, that provides for civil

3  enforcement of the specific requirements of Sections 2924 *et seq.*   California courts have declined

4  to read into the statute an implied right of action to enforce its substantive requirements.  See, e.g.,

5  Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149, 1155 (2011), review denied

6  (May 18, 2011), cert. denied, ___ U.S. ___ , 132 S. Ct. 419 (U.S. 2011) (holding that, while

7  Section 2924(a) establishes which entities authorized to initiate foreclosure, the statute does not

8  "provide for a judicial action to determine whether the person initiating the foreclosure process is

9  indeed authorized").  However, California courts do look to the statute's requirements in

10 considering an equitable action to set aside a wrongful foreclosure sale.  See Lona v. Citibank,

11 N.A., 202 Cal. App. 4th 89, 104 (2011).

12      The nature of Plaintiff's "wrongful foreclosure" cause of action is unclear from the FAC.

13 It does not appear from the FAC that she is seeking to set aside a foreclosure sale, see FAC, ¶ 33,

14 and at oral argument it emerged that there is no sale to set aside.  Therefore, the claim cannot be

15 construed as an equitable action to set aside a foreclosure sale which incorporates the requirements

16 of the wrongful foreclosure statute.  As remedies for her wrongful foreclosure claim, Plaintiff

17 seeks money damages, attorney's fees, and an order "enjoining Defendants from carrying out any

18 wrongful foreclosure sales."  Id.  But in her opposition brief, she cites no case in which any court

19 has recognized a cause of action seeking any of those remedies which incorporates the

20 requirements of the wrongful foreclosure statute.  In Susilo v. Wells Fargo Bank, N.A., the court

21 looked to the foreclosure statute's requirements in determining the scope of the borrower's duty of

22 care in a negligence claim.  796 F. Supp. 2d 1177, 1187 (C.D. Cal. 2011).  Anderson v. Heart Fed.

23 Sav. & Loan Ass'n was a "suit in equity . . . to set aside [a] foreclosure sale, the traditional method

24 by which a nonjudicial foreclosure sale is challenged."  208 Cal. App. 3d 202, 209-10 (1989).

25 And Mabry held that Section *2923.5* contained an inherent right of action to enjoin an imminent

26 foreclosure sale, but it did not hold that the wrongful foreclosure statute itself contained such a

27 right.  185 Cal. App. 4th at 226.

28

United States District Court
Northern District of California

15

Since Defendants are not reasonably on notice of the basis of the claims against them, the claim must be dismissed.  If the claim is re-asserted in any amended complaint, Plaintiff must clarify the nature of her cause of action.  She may only seek remedies for "wrongful foreclosure" if those remedies have been recognized to be available in an action for which a violation of the wrongful foreclosure statute is a factual predicate.

**E.      ECOA**

Plaintiff's third cause of action against BANA is for violation of the ECOA.

"The purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." Brothers v. First Leasing, 724 F.2d 789, 793-94 (9th Cir. 1984) (citations omitted).  "Congress reaffirmed the goal of antidiscrimination in credit in the 1976 amendments to the ECOA by adding race, color, religion, national origin, and age to sex and marital status as characteristics that may not be considered in deciding whether to extend credit."  Id. (citations omitted).

The Ninth Circuit recently described ECOA as follows:

> ECOA . . . makes it illegal "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). One way that ECOA effectuates this goal is through its notice requirement, which states: "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." Id. § 1691(d)(2). ECOA defines an "adverse action" as a:
>
> > denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.
>
> Id. § 1691(d)(6).
>
> When a creditor takes an adverse action against an applicant without giving the required notice, the applicant may sue for a violation of ECOA. Id. § 1691e ("Any creditor who fails to comply with any

16

requirement imposed under this subchapter shall be liable to the
aggrieved applicant for any actual damages sustained by such
applicant"); see also Thompson v. Galles Chevrolet Co., 807 F.2d
163, 166 (10th Cir.1986) (quoting Sayers v. Gen. Motors
Acceptance Corp., 522 F.Supp. 835, 840 (W.D.Mo.1981)).

Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1210 (9th Cir. 2013).  In addition to requiring lenders to provide a statement of reasons for taking any adverse action, the statute also requires a creditor to notify a credit applicant of the creditor's action within thirty days after receipt of a completed application for credit (unless a longer period is set by regulation). 15 U.S.C. § 1691(d)(1).[10]

The Federal Reserve regulations implementing the ECOA appear to have two distinct requirements: a bar on discrimination in lending and a separate set of procedural notice and response requirements.

> The purpose of this regulation is to promote the availability of credit to all creditworthy applicants without regard to race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to contract); to the fact that all or part of the applicant's income derives from a public assistance program; or to the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act. *The regulation prohibits creditor practices that discriminate* on the basis of any of these factors. *The regulation also requires creditors to notify applicants of action taken on their applications*; to report credit history in the names of both spouses on an account; to retain records of credit applications; to collect information about the applicant's race and other personal characteristics in applications for certain dwelling-related loans; and to provide applicants with copies of appraisal reports used in connection with credit transactions.

12 C.F.R. § 202.1(b) (emphases added).  While the Court has not identified any Ninth Circuit precedent directly on point, in Schlegel the Ninth Circuit referred to the procedural notice requirements as "[o]ne way that ECOA effectuates" the goal of effectuating the broader antidiscrimination purpose of the statute.[11]  Other circuits, and courts within this district, have

---

[10] Statutory references within this section are to sections of Title 15 of the United States Code.

[11] It stands to reason that, in order to decrease discriminatory practices, Congress might have imposed a requirement that lenders describe their reasons for all credit denials.

explicitly recognized that the ECOA's notice requirements are distinct from the prohibition against discrimination in lending.  See Davis v. U.S. Bancorp, 383 F.3d 761, 766 (8th Cir. 2004) ("in addition to a generalized prohibition of discrimination, [ECOA] also establishes procedural requirements for extending credit and communicating with applicants"); see also Watts v. JP Morgan Chase Bank, N.A., No. 5:11-cv-02780-LHK, 2012 U.S. Dist. LEXIS 119980, at 8 (N.D. Cal. Aug. 22, 2012) ("The ECOA prohibits discrimination against an applicant for credit . . ." and, "in addition, the ECOA establishes procedural requirements that creditors must follow in notifying any applicant when action is taken on the credit application").

Defendant, and to some extent also Plaintiff, emphasize a pleading requirement adopted by many courts within this district that applies to ECOA discrimination claims.  "While the Ninth Circuit has not had an opportunity to articulate a standard for ECOA discrimination claims, other circuits apply a multi-element test to determine whether a plaintiff properly has pleaded a claim of discrimination under the ECOA."  Hafiz v. Greenpoint Mortgage Funding, Inc., 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009).  "To satisfy this test, plaintiff must allege that: (1) she is a member of a protected class; (2) she applied for credit with defendants; (3) she qualified for credit; and (4) she was denied credit despite being qualified."  Id. (citing Chiang v. Veneman, 385 F.3d 256, 259 (3rd Cir. 2004)).

The Court views these pleading requirements as applicable to Plaintiff's ECOA claim only to the extent that she claims she was actually the victim of discrimination.  (Notably, Hafiz did not involve the procedural notice requirements of the ECOA.)  ECOA's procedural requirements apply regardless of whether the Hafiz prerequisites have been satisfied.  Since the FAC could be read to bring both types of ECOA claims, the Court addresses each potential theory in turn.

### 1.      ECOA's 30-Day Notice Requirement

Plaintiff argues that her July 2012 modification applications qualified as an application for "an extension of credit" under the ECOA, and that "Defendant's failure to notify Plaintiff of an answer within thirty days of the receipt of a loan modification application constitutes a violation of the Equal Credit Opportunity Act."  FAC, ¶¶ 37-38.

United States District Court
Northern District of California

1    Defendants argue that "Plaintiffs reading of the statute entirely misconstrues the

2    applicability of the ECOA."  Mot. 7:18-19.  Defendants state that "the statute in its entirety states

3    that the 30-day notice requirement relates to credit applications submitted to '(1) any credit

4    assistance program expressly authorized by law for an economically disadvantaged class of

5    persons; (2) any credit assistance program administered by a nonprofit organization for its

6    members or an economically disadvantaged class of persons; or (3) any special purpose credit

7    program offered by a profit-making organization to meet special social needs which meets

8    standards prescribed in regulations by the Bureau . . . .'"  Mot. 7:19-24.

9    The statute says precisely the opposite.  It says, in a passage directly above the portion

10   quoted by Defendants, that "[i]t is *not* a violation of this section for a creditor to refuse to extend

11   credit offered pursuant to" the specific programs listed above, if the refusal is made pursuant to

12   those programs.  15 U.S.C. § 1691(c) (emphasis added).

13   However, Defendants also point out that the ECOA's notice requirements do not apply to a

14   creditor's "refusal to extend additional credit under an existing credit arrangement where the

15   applicant is delinquent or otherwise in default."  15 U.S.C. § 1691(d)(6).  At the time of July 2012

16   modification application, Plaintiff alleges that she had not been making her monthly payments for

17   months.  This would appear to bar her claim.

18   Courts of this district have rejected ECOA claims similar to this one on similar facts.

19   Franczak v. Suntrust Mortg. Inc., No. 5:12-cv-01453-EKD, 2013 WL 843912, at *5 (N.D. Cal.

20   Mar. 6, 2013); Harvey v. Bank of Am., N.A., 906 F. Supp. 2d 982, 991 (N.D. Cal. 2012).[12]

21   Plaintiff, however, makes an argument that appears not to have been presented to those courts.

22   Invoking California Civil Code Section 1511, Plaintiff claims that, since BANA's representatives

23   induced her not to perform, she was not actually in default or delinquent in her payments at the

24   time she submitted her July 2012 modification request.

25   However, like the plaintiffs who made a similar argument in bringing a wrongful

26

27   [12] Strictly speaking, however, those courts rejected the ECOA claim for failing to satisfy the Hafiz
     pleading requirements, not specifically because the lender was in default at the time of the

28   allegedly adverse action.

19

foreclosure cause of action, Plaintiff "cite[s] no legal support for the proposition that an oral promise under Cal. Civ. Code § 1511, which excuses performance when a creditor induces a debtor not to perform, can extinguish rights guaranteed by a signed and recorded legal obligation." Pacini v. Nationstar Mortgage, LLC, No. C 12-04606 SI, 2013 WL 2924441, at *7 (N.D. Cal. June 13, 2013). "The statute of frauds plainly precludes an oral waiver in the case of deeds of trusts and any modification to a deed of trust or promissory note must be in writing." Id. (citing Secrest v. Sec. Nat'l Mortgage Loan Trust 2002-2, 167 Cal. App. 4th 544, 555 (2008)). For similar reasons, since Plaintiff appears to concede that she was in default under the written terms of her loan agreement, she cannot escape U.S.C. § 1691(d)(6)'s bar by alleging an oral modification or waiver. For purposes of applying ECOA's "delinquent or otherwise in default" requirement, it seems most appropriate to apply the undisputed terms of the parties' agreement, even if one party invokes equitable principles to bar enforcement of those requirements.

### 2.    Discrimination in Lending

To the extent that Plaintiff's ECOA claim alleges that she was discriminated against, it is not sufficiently pled to put Defendants reasonably on notice of that claim. Aside from asserting Plaintiff is member of a protected class, FAC focuses almost exclusively on BANA's failure to provide notice in response to her July 2012 loan modification. FAC ¶¶ 35-38.

If Plaintiff chooses to amend her complaint to assert a claim of discrimination, she must state that specifically, and must also satisfy the Hafiz pleading requirements. Id. As Plaintiff correctly notes, Hafiz requires only that she plead that she is a "member" of an ECOA protected class; it does not require her to provide detailed factual allegations at the pleading stage proving that she was denied credit because of that membership. It is sufficient to plead facts from which it is plausible to conclude that she was denied for those reasons. But she must also allege specific facts, not mere conclusory assertions, demonstrating that she "qualified for credit," and was "denied credit despite being qualified." The current FAC does not contain such facts.

### 3.    Applicability of ECOA to Home Loan Modifications

On reply, Defendant, citing district court cases, also argues that Plaintiff is not a credit

United States District Court
Northern District of California

1    "applicant" and is hence outside the reach of ECOA since she was seeking modification of an

2    existing loan rather than origination of a new loan.  8:19-27.  Since Plaintiff may amend her

3    complaint to re-assert her ECOA claim, the Court addresses this issue for the benefit of the parties.

4          At least one court in this district has, in dicta, concluded that it is "doubtful" that "a loan

5    modification can qualify as a 'credit application'" under ECOA.  Franczak, 2013 WL 843912, at

6    *5.  The Court is unaware of Ninth Circuit authority directly on point, although in Schlegel the

7    Ninth Circuit seemed to assume that a loan modification qualifies as a credit application without

8    deciding the point.  Schlegel, 720 F.3d at 1211.

9          However, the Seventh Circuit has held that a homeowner "'received an extension of

10   credit,' and thus become an 'applicant,'" within the meaning of ECOA, when a lender bank

11   offered the homeowner a loan modification.  Estate of Davis v. Wells Fargo Bank, 633 F.3d 529,

12   538 (7th Cir. 2011).  That holding brought loan modifications within the reach of ECOA, or at

13   least within the reach of Section 1691(a)'s antidiscrimination mandate.  Also, the Federal Reserve

14   has opined that loan modification requests under the Department of Treasury's Making Home

15   Affordable Modification Program ("HAMP") do qualify as "credit applications" under ECOA, and

16   that loan modifications outside the HAMP should be analyzed using the same factors.  Ltr. from

17   Bd. Govs. of the Fed. Res. System to Offcrs. & Mgrs. in Charge of Consumer Affairs Sections

18   (Dec. 4, 2009), http://www.federalreserve.gov/boarddocs/caletters/2009/0913/caltr0913.htm; see

19   also Coulibaly v. J.P. Morgan Chase Bank, N.A., Case No. 10-3517 DKC, 2012 WL 3985285 (D.

20   Md. Sept. 7, 2012) (citing the same letter), aff'd sub nom. Coulibaly v. JP Morgan Chase Bank,

21   N.A., 12-2230, 2013 WL 1811879 (4th Cir. May 1, 2013).

22         The Court finds the analysis in both Davis and the Federal Reserve letter persuasive, and

23   now holds that a home loan modification request constitutes a "credit application" under ECOA.

24                        **4.    Leave to Amend**

25         Plaintiff has leave to amend the complaint to re-assert an ECOA claim that Defendants

26   violated the notice requirements applicable to her July 2012 loan modification application, and/or

27   to assert that she was discriminated against in lending.  If she chooses to assert the procedural

28

United States District Court
Northern District of California

21

1    notice claim, she must allege new facts not contained in the FAC which demonstrate that she was

2    not delinquent or in default on her payments at the time the notice requirement was violated.  If

3    she chooses to amend the complaint to assert a lending discrimination claim, she must specifically

4    clarify that that is the nature of her claim, and satisfy the <u>Hafiz</u> pleading requirements with

5    specific, non-conclusory factual allegations.

6          **F.**       **Breach of the Covenant of Good Faith and Fair Dealing**

7          Plaintiff's fourth cause of action against both Defendants is for breach of the covenant of

8    good faith and fair dealing.  In California, the elements of a claim for breach of the covenant of

9    good faith and fair dealing are as follows:  (1) there must be a contractual relationship between the

10   parties; (2) plaintiff must have performed, or have been excused from performing, her obligations

11   under the contract; (3) defendant must have unfairly prevented plaintiff from receiving the benefits

12   that plaintiff was entitled to receive under the contract; and (4) defendant's conduct must have

13   resulted in harm to plaintiff.  2-23 <u>MB Practice Guide: CA Contract Litigation</u> § 23.04.

14         Defendants argue that the claim must be dismissed because Plaintiff has not "identified the

15   actual contract under which this cause of action arises."  Mot. 10:24.  In fact, Plaintiff did so at

16   FAC ¶ 44, identifying the Deed of Trust as the pertinent contract.  Defendants also argue that "has

17   not pointed out the specific provision within this unidentified contract that Defendants purportedly

18   impeded."  Mot. 10:25-26.  The FAC states that she claims that Defendants impeded her rights to

19   make monthly payments under the contract.  FAC ¶¶ 44 & 47.  (It is plausible to infer that it is not

20   the right to pay money in itself that interests Plaintiff, but rather the right to make regular monthly

21   payments and so remain current on her loan and avoid foreclosure.)

22         Finally, Defendants argue that none of the pled facts demonstrate that Defendants engaged

23   in any "unfair interference" with the contract, because none of the alleged actions constitute a

24   "conscious and deliberate act, which unfairly frustrates the agreed common purposes and

25   disappoints the reasonable expectations of the other party thereby depriving that party of the

26   benefits of the agreement."  Mot. 10:27-11:7 (<u>citing</u> <u>Careau & Co. v. Sec. Pac. Bus. Credit, Inc.</u>,

27   222 Cal. App. 3d 1371, 1395 (1990)).  Plaintiff alleges that BANA representatives told her that if

28

United States District Court
Northern District of California

she went into default she would receive a loan modification and suffer no negative repercussions for being in default, and then, when she did so, BANA denied her a loan modification and moved to foreclose on her home.  It is plausible to infer from these facts, if they are true, that BANA could have consciously and deliberately frustrated the parties' common purposes in agreeing to the mortgage agreement.  The Court does not agree with Defendants that a defendant must somehow literally "force" a plaintiff to do something that frustrates the contract in order to be liable for breach of the implied covenant.[13]

### G.      Promissory Estoppel

Plaintiff's fifth cause of action against both Defendants is for promissory estoppel.  The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."  Advanced Choices, Inc. v. State Dept. of Health Services, 182 Cal.App.4th 1661, 1672 (2010).  Defendants move to dismiss on the grounds that the Statute of Frauds bars this cause of action, because Plaintiff has failed to allege a sufficiently "clear and ambiguous" promise, and because any reliance by Plaintiff was not reasonable.

#### 1.      Statute of Frauds

As mentioned supra at Part III-E-1, the Statute of Frauds bars Plaintiff from claiming that her conversations with BANA representatives waived or modified her contractual agreement.  See Secrest, 167 Cal.App.4th at 552.  However, as the California Court of Appeal recently recognized

---

[13] The Court acknowledges a split of authority on this question within this district.  Compare Ren v. Wells Fargo Bank, N.A., 2013 WL 2468368, at *2-3 (N.D. Cal. June 7, 2013); Franczak, 2013 WL 843912, at *3-4; Pacini, 2013 WL 2924441, at *6-7 (all dismissing similar implied covenant claims) with Harris v. Wells Fargo Bank, N.A., No. 12-CV-05629-JST, 2013 WL 1820003, at *9-10 (N.D. Cal. Apr. 30, 2013); Harvey v. Bank of Am., N.A., No. 12-3238 SC, 2013 WL 632088, at *3 (N.D. Cal. Feb. 20, 2013) (both denying similar motions to dismiss).  In any case, this case is distinguishable even from the former line of cases, since Plaintiff alleges that BANA did more than leave her the impression that going into default would entitle her to a loan modification; she alleges they explicitly assured her that she would suffer no negative repercussions for going into default, would not be foreclosed upon while she applied for a modification, and stood to benefit from a loan modification if she went into default.  FAC ¶¶ 12-13.

in a loan modification/foreclosure case, "[t]he doctrine of estoppel has been applied where an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute." Chavez v. Indymac Mortgage Servs., 219 Cal. App. 4th 1052, 1062 (2013) (internal citations omitted).

Defendants state that "Plaintiff has not alleged any change in position as a result of the alleged promise to postpone the sale." Mot. 14:20-21. Plaintiff claims that she entirely stopped making payments on her mortgage for more than two years, affecting her credit and putting her at risk of foreclosure. "Whether a party is precluded from using the statute of frauds defense in a given case is generally a question of fact." Chavez, 219 Cal. App. 4th at 1062. The Court cannot conclude at the motion to dismiss stage that the repercussions suffered by Plaintiff cannot, as a matter of law, constitute a "serious change in position" sufficient to bar Plaintiff from invoking estoppel.

### 2.    Clear and Unambiguous Promise

Defendants also suggest that "Plaintiff does not allege a clear, unambiguous promise." "To be enforceable, a promise need only be 'definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.'" Garcia v. World Sav., FSB, 183 Cal. App. 4th 1031, 1045 (2010) (quoting Bustamante v. Intuit, Inc., 141 Cal.App.4th 199, 209 (2006)). The FAC alleges that BANA represented to Plaintiff that skipping payments would not negatively impact her credit or cause her to lose her property through foreclosure, and would entitle her to a loan modification. FAC ¶ 51. This is a sufficiently clear and ambiguous promise to support a viable claim.

### 3.    Reasonable Reliance

However, the Court agrees with Defendants that the reliance Plaintiff claims was not objectively reasonable. As an initial matter, Plaintiff might possibly have been justified in relying on BANA's oral representations in making her initial decision to go into default. Perhaps it was reasonable to miss a payment or two while the promised modification was on its way. However,

the FAC alleges that Plaintiff, while being been willing and able to pay her monthly payments, chose to go into default and remain in that state for more than two years, without ever getting any clear indication that a loan modification was imminent, and long after she could reasonably have expected that she would suffer no negative repercussions for defaulting.[14]  Plaintiff alleges that she continued submitting "countless documents" to BANA between July 2012 and March 2013, without receiving any status updates at all, and continued to hope that a loan modification was imminent, and that it would be prudent to remain in default, even after receiving a written Notice of Default.  FAC ¶¶ 16-17.

"[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts."  Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1239 (1995) (citing Guido v. Koopman, 1 Cal.App.4th 837, 843 (1991)).  Under the facts pleaded in the FAC, Plaintiff cannot plead a viable claim of promissory estoppel.

### 4.    Leave to Amend

In any further amended complaint, Plaintiff has leave to re-assert this cause of action only if she can allege new facts not in the FAC which demonstrate the reasonability of her reliance, or if she clarifies that she only seeks to recover damages incurred during a very short period following August 2011.

### H.    Fraud and Negligent Misrepresentation

Plaintiff's sixth and seventh causes of action against BANA are for fraud and negligent misrepresentation.  Defendants move to dismiss both claims on three grounds: that the claims are insufficiently pled under Rule 9(b) of the Federal Rules of Civil Procedure, that the FAC fails to allege the misrepresentation of a "past or existing" material fact, and that Plaintiff has failed to

---

[14] At oral argument, Plaintiff's counsel stated that after first going into default, Plaintiff did later make some payments on her loan as part of her bankruptcy proceeding.  The fact of Plaintiff's acknowledged bankruptcy creates significant tension with her claim to always have been willing and able to make her monthly payments.  More importantly, Plaintiff she does not allege in the FAC that she ever made an effort to become current on her loan.  She appears to argue that, rather than doing so, it remained objectively reasonable for her to remain in default in the hopes of receiving a loan modification.  The Court cannot agree.

United States District Court
Northern District of California

1   allege justifiable reliance. Defendants also move to dismiss the negligent misrepresentation claim

2   on the grounds that BANA lacks a legal duty of care to Plaintiff.

3                         **1.      Rule 9(b) Pleading Requirements**

4           Both fraud-based claims are subject to the heightened pleading requirements of Rule 9(b)

5   of the Federal Rules of Civil Procedure, which requires a party to "state with particularity the

6   circumstances constituting fraud." To satisfy Rule 9(b), the allegations must be specific enough to

7   give a defendant notice of the particular misconduct alleged to constitute the fraud such that the

8   defendant may defend against the charge. <u>Semegen v. Weidner</u>, 780 F.2d 272, 731 (9th Cir.

9   1985). In general, allegations sounding in fraud must contain "an account of the time, place, and

10  specific content of the false representations as well as the identities of the parties to the

11  misrepresentations." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 765 (9th Cir. 2007).

12          Defendants object that the claim is insufficiently pled because the FAC does not name the

13  BANA representative to whom Plaintiff spoke in August 2011. Mot. 17:4-7. The Court

14  concludes that the allegations provide sufficient notice to Defendant about the allegedly false

15  statements to enable Defendants to defend the charge. The FAC names the times and locations of

16  Plaintiff's conversations with BANA representatives, and describes the apparent authority, and

17  general descriptions, if not the names, of the representatives to whom she spoke. Since more

18  detailed information is uniquely within Defendants' possession, more cannot be expected of

19  Plaintiff in pleading her claim. Defendants also object that Plaintiff has insufficiently alleged that

20  Defendants made the misstatements knowingly, Mot. 18:3-4, but under Rule 9(b), "intent,

21  knowledge, and other conditions of a person's mind may be alleged generally."

22                        **2.      Past or Existing Material Fact**

23          "To be actionable, a negligent misrepresentation must ordinarily be as to past or existing

24  material facts." <u>Tarmann v. State Farm Mut. Auto. Ins. Co.</u>, 2 Cal. App. 4th 153, 158 (1991).

25  "[P]redictions as to future events, or statements as to future action by some third party, are deemed

26  opinions, and not actionable fraud." <u>Id.</u> (<u>citing</u> 5 Witkin, Summary of Cal. Law (9th ed. 1988)

27  Torts, § 678, pp. 779-780).

28          Defendants argue that the alleged misrepresentations were statements of future action.

*United States District Court*
*Northern District of California*

This is true of many of the alleged misrepresentations.  But as Plaintiff points out, the statement that BANA had a "policy" to inform borrowers to miss payments to receive loan modifications, and a "policy" not to report the delinquency to credit agencies, are statements of existing fact. FAC, ¶ 12.  Defendants do not respond to this argument on reply.

### 3.    Reasonable Reliance

For essentially the same reasons as discussed at Part III-G-3, *supra*, the Court agrees that Plaintiff has not alleged that her reliance on the alleged April 2011 misrepresentation was objectively reasonable, at least for the extent of time that Plaintiff claims to have relied upon it.

### 4.    Want of Duty

Finally, Defendants argue that Plaintiff cannot sustain her negligent misrepresentation claim because she has not established that BANA owed her a duty of care.  See Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal.App.3d 1089, 1096 (1991) ("a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money").  However, the rule that a lender does not owe a duty of care to a borrower is a general rule with limited exceptions.  See Roussel v. Wells Fargo Bank, No. 12-cv-040507-CRB, 2013 WL 146370, at *6 (N.D. Cal. Jan. 14, 2013).  In this case, as Plaintiff argues in her opposition, the Roussel factors favor the finding of a duty by lenders to at least not directly misrepresent to their foreclosure policies to borrowers.  Opp. 17:15-25.  Defendants do not respond to this argument in their reply.

### 5.    Leave to Amend

In any amended complaint, Plaintiff has leave to re-assert this cause of action only if she can allege new facts not in the FAC which demonstrate the reasonability of her reliance, or if she clarifies that she only seeks to recover damages incurred during a very short period following the initial denial.

### I.    UCL

Plaintiff's final cause of action, against both Defendants, is for violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq*.  "The UCL sets out three different kinds of business acts or practices that may constitute unfair competition: the unlawful,

United States District Court
Northern District of California

the unfair, and the fraudulent." <u>Rose v. Bank of Am., N.A.</u>, 57 Cal. 4th 390, 394 (2013). Defendants move to dismiss because Plaintiff does not have UCL 'standing,' and because the FAC fails to state a claim under each of the three UCL "prongs."

### 1.   Standing

To have standing to bring a UCL claim, a plaintiff must allege that she has "suffered injury in fact and has lost money or property." Cal. Bus. & Prof. Code § 17204.  Defendants argue that "Plaintiff does not and cannot allege that she has lost any money or property because she does not claim that the Subject Property has been sold." Mot. 20:17-18.  But Plaintiff does allege at FAC ¶ 82 that she lost "money and property" as a result of Defendants' actions.

### 2.   Unlawful Practices Prong

"By proscribing 'any unlawful' business practice, 'section 17200 'borrows' violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." <u>Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180, 973 P.2d 527, 539-40 (1999) (<u>quoting</u> <u>State Farm Fire & Casualty Co. v. Superior Court</u> 45 Cal.App.4th 1093, 1103 (1996).  Defendants move to dismiss the "unlawful" UCL claim on the grounds that Plaintiff has pled no violations of other laws, noting that "a UCL claim stands or falls on the fate of the antecedent substantive causes of action." Mot. 21:4-5, 22:2-12.  Since the Court has not dismissed all of Plaintiff's antecedent claims, this argument does not support dismissal of the UCL 'unlawful practices' claim.

### 3.   Unfair Practices

Defendant moves to dismiss this claim because, while "Plaintiff claims that Defendants violated several laws or statutory provisions that could carry out a public policy, Plaintiff's claims to those violations fail." Mot. 22:15-16.  Since the Court will not dismiss all of those claims, Defendants argument for dismissal fails.

### 4.   Fraudulent Practices

Defendants' only argument for dismissing the claims under this prong is the failure to satisfy Rule 9(b)'s heightened pleading standard.  Mot. 22:17-19.  For the same reasons stated at

Part III-H-1, *supra*, the Court finds that the allegations of the FAC satisfy the pleading requirements of Rule 9(b).[15]

## IV.    CONCUSION

Defendants' motion is GRANTED IN PART and DENIED IN PART.  The FAC's second, third, fifth, sixth, and seventh causes of action are DISMISSED WITHOUT PREJUDICE.  The remaining causes of action are not dismissed.

The Court hereby ORDERS Plaintiff to file a second amended complaint not later than twenty-one days from the date of this order, which asserts all bases of subject-matter jurisdiction that Plaintiffs believe apply to this action.  In the second amended complaint, Plaintiff may delete the dismissed claims, but also has leave to amend the complaint to reassert those claims as provided for *supra*.  If Plaintiff chooses to re-assert the dismissed claims, she must, in a separate document, specifically identify the new allegations she has made to respond to the deficiencies addressed in this order.

Failure to file a second amended complaint within twenty-one days may result in dismissal with prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated:  November 9, 2013

JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

---

[15] As noted *supra* at III-A, since this is a fraud-based claim brought against two Defendants on an agency theory, Jackson v. Fischer suggests that Rule 9(b) may require the pleading of the specific elements of a legal agency relationship.  931 F. Supp. 2d at 1061.  Since Defendants did not directly raise this argument in their motion, the Court will not dismiss the claim on this ground.  However, in a second amended complaint, Plaintiff should consider the potential applicability of this law and may amend accordingly.