Matthew Mellen (SBN: 233350)
Sarah Adelaars (SBN: 281748)
MELLEN LAW FIRM
411 Borel Ave, Suite 230
San Mateo, California 94402
Telephone:      (650) 638-0120
Facsimile:      (650) 638-0125
mellenlaw@yahoo.com

Attorneys for Plaintiff
TINA M. VASQUEZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA M. VASQUEZ, an individual,<br><br>Plaintiff,<br>v.<br><br>BANK OF AMERICA, N.A., a national association; THE BANK OF NEW YORK MELLON; and Does 1-50, inclusive,<br><br>Defendants. | CASE NO.: 3:13-CV-02902-JST<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF:**<br><br>1. Violation of Cal. Civil Code § 2923.6<br><br>2. Violation of Cal. Civil Code § 2924, *et seq.*<br><br>3. Violation of 11 U.S.C. § 1691<br><br>4. Breach of the Implied Covenant of Good Faith and Fair Dealing<br><br>5. Promissory Estoppel<br><br>6. Fraud<br><br>7. Negligent Misrepresentation<br><br>8. Violation of Business and Professions Code § 17200<br><br>**DEMAND FOR JURY TRIAL** |

### PRELIMINARY STATEMENT

1.      Plaintiff, TINA M. VASQUEZ, brings this complaint for Defendants' violations of the newly enacted Homeowner Bill of Rights and related causes of action.  In the case at hand, Plaintiff was current on her loan when Defendant BANK OF AMERICA (hereafter" BANK OF AMERICA") induced her to stop making payments on the loan through a series of false promises,

1

1   in order to receive a loan modification.  Thereafter, when Plaintiff was in the process of applying

2   for a loan modification, Defendants recorded a Notice of Default, indicating its intent to sell

3   Plaintiff's home while it was reviewing Plaintiff's completed loan modification application.

4   Moreover, on or around May 20, 2013, Defendants purported to deny Plaintiff's loan

5   modification application and then immediately filed a Notice of Trustee's Sale the following day,

6   thereby violating Plaintiff's right to appeal the so-called denial.  This lawsuit follows.

7   **JURISDICTION AND VENUE**

8   2.      This is an action asserting violations of Federal Law and California State Law.  This

9   action is brought in this Court based on diversity of citizenship under 28 U.S.C. § 1332.  Plaintiff

10  is, and at all times alleged herein was, domiciled in the state of California.  For purposes of

11  diversity, Defendant BANK OF AMERICA, N.A. ("BofA") is domiciled in North Carolina,

12  where it has its headquarters and its principal place of business.  Defendant BANK OF NEW

13  YORK MELLON ("BANK OF NY") is domiciled in New York, where it has its headquarters

14  and its principal place of business.  Plaintiff lives in the property as his principal residence.  The

15  residential loan mortgage concerns the property located at 25703 Barnard Street, Hayward,

16  California 94545 ("Property"). Venue is proper in this Court because a substantial part of the

17  events giving rise to the claims herein occurred in the City of Hayward and County of Alameda.

18  Therefore, venue is proper in the Northern District Court of California.

19  3.      This court has personal jurisdiction over the parties as all Defendants engage in business

20  within the State of California.  Defendants' businesses involves providing mortgage loans and

21  related services to consumers in the State of California.

22  **PARTIES**

23  4.      Plaintiff is an individual who, at all relevant times herein, lives in and owns the property

24  located at 25703 Barnard Street, Hayward, California 94545.

25  5.      At all times relevant, Plaintiff is informed, believes, and thereon alleges that Defendant

26  THE BANK OF NEW YORK MELLON ("BANK OF NY") is a diversified financial marketing

27  and/or corporation engaged primarily in residential mortgage banking and/or related business and

28  is the current beneficiary of Plaintiff's loan.

2

6.      At all times relevant, Plaintiff is informed, believes, and thereon alleges that Defendant BANK OF AMERICA, N.A. ("BANK OF AMERICA") is a diversified financial marketing and/or corporation engaged primarily in residential mortgage banking and/or related business and is the current servicer of Plaintiff's loan.

7.      Plaintiff is ignorant of the true names and capacities of the Defendants sued herein under the fictitious names Does 1 through 50, inclusive, and Plaintiff will amend this complaint to allege such names and capacities at such time as they are ascertained.  Each fictitiously named Defendant is responsible in some manner for the wrongful acts complained of herein.

8.      Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venturer of each remaining Defendants.  Each Defendant was acting in concert with each remaining Defendant in all matters alleged, and each Defendant has inherited any and all violations or liability of their predecessors-in-interest.  Additionally, each Defendant has passed any and all liability to their successors-in-interest, and at all times were acting within the course and scope of such agency, employment, partnership, and/or concert of action.

## AGENCY ALLEGATIONS

9.      Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venturer of each remaining Defendants.  Each Defendant was acting in concert with each remaining Defendant in all matters alleged, and each Defendant has inherited any and all violations or liability of its predecessors-in-interest.  Additionally, each Defendant has passed any and all liability to its successors-in-interest, and at all times were acting within the course and scope of such agency, employment, partnership, and/or concert of action.

## STATEMENT OF FACTS

10.     On or about June 1, 2005, Plaintiff obtained a loan on her property located at 25703 Barnard Street, Hayward, California 945445 (the "Property"), through Countrywide Home Loans. To secure the finance, Plaintiff executed a Promissory Note and Deed of Trust in favor of Countrywide Home Loans.  The Deed of Trust includes a provision for attorneys' fees.

Subsequently, Defendant BANK OF NY acquired the Loan and became the holder of the Note and Beneficiary under the Deed of Trust for all relevant times of the allegations herein.  Further, Defendant BANK OF AMERICA became the servicer of the loan.

11.     Between June 1, 2005 and August 2011, Plaintiff fully performed under the contract by making a timely monthly payment each month.

12.     In or around August 2011, Plaintiff called BANK OF AMERICA at 1(800)669-6650 to request a loan modification.  Plaintiff spoke with a female representative of BANK OF AMERICA'S who identified herself as Plaintiff's customer relationship manager.  Plaintiff cannot currently recall the female's name, however, BANK OF AMERICA'S servicing notes should identify the representative and the contents of the conversations that Plaintiff had with the representatives in or around August 2011.  BANK OF AMERICA'S representative told Plaintiff that she was qualified for a modification of her home loan, however, she told Plaintiff that the only way to receive a loan modification was to be at least sixty days delinquent on her payments, prior to applying for a loan modification.  Plaintiff expressed concern about missing payments, and the representative responded that BANK OF AMERICA was not supposed to tell borrowers this, but it was Defendants' policy to inform borrowers to miss payments for at least sixty days, before they could apply for a loan modification.   Plaintiff inquired about the effect missed payments would have on her credit and BANK OF AMERICA'S representative informed Plaintiff that it was BANK OF AMERICA'S policy to not report Plaintiff's delinquency to credit agencies if the borrower was missing payments in order to receive a modification.  Instead, BANK OF AMERICA'S representative told Plaintiff that it would refrain from reporting Plaintiff's account status at all to credit agencies while Plaintiff was being reviewed for a modification.  Plaintiff also learned that BANK OF AMERICA would not initiate foreclosure proceedings against Plaintiff's property while she was being reviewed for a modification. Therefore, in reliance on BANK OF AMERICA'S statements, Plaintiff did not make her September 2011 payment.

13.     In or around November 2011, when Plaintiff was sixty days delinquent in payments, she contacted BANK OF AMERICA at 1(800)669-6650 to begin applying for a loan modification, as

4

she was instructed to do by BANK OF AMERICA'S female representative in August 2011.
However, the representative that Plaintiff was directed to during this phone call advised Plaintiff
that her account was not yet delinquent enough and advised her to call back the following month
to request a modification.

14.     Thereafter, in December 2011, Plaintiff submitted a complete loan modification
application for BANK OF AMERICA'S review.  In or around February 2012, when Plaintiff had
not received any determination on her loan modification application, Plaintiff attended a
Neighborhood Assistance Corporation of America, hereafter "NACA," event and spoke with
another female representative of BANK OF AMERICA.  This representative advised Plaintiff
that in order to receive a loan modification, she should discharge some debt and solicit a
roommate who could help raise Plaintiff's monthly income.  Therefore, based on these
representations from BANK OF AMERICA, Plaintiff filed for bankruptcy in March 2012 and
discharged approximately $66,000.00 in debt in or around June 2012.  Further, Plaintiff
immediately found a roommate to pay approximately $1,000.00 per month.

15.     In or around July 2012, after Plaintiff's bankruptcy was discharged, she contacted BANK
OF AMERICA once more to request a loan modification. On July 25, 2012, via letter, BANK OF
AMERICA acknowledged that Plaintiff had submitted a completed loan modification application.
However, two days later, on July 27, 2012, Plaintiff received a letter indicating that her
modification was denied because Plaintiff "did not complete and submit all of the documents
[BANK OF AMERICA] requested."  Confused by these contradictory letters, Plaintiff
immediately contacted BANK OF AMERICA and was informed that the denial letter was sent in
error.  However, BANK OF AMERICA told Plaintiff that she would need to submit a new loan
modification application, which she immediately did.

16.     Between July 2012 and March 2013, Plaintiff continued to submit and re-submit countless
documents to BANK OF AMERICA in pursuit of a loan modification.  However, despite
Plaintiff's frequent phone calls and attempts to determine the status of her modification, she never
received any status of her loan modification review.

17.     On or around February 11, 2013, when Plaintiff was still in loan modification review and had never received a denial, Plaintiff received a Notice of Default. Plaintiff was incensed as she was still in loan modification review and BANK OF AMERICA had indicated that she did not risk losing her property while she was in loan modification review. Therefore, Plaintiff immediately contacted BANK OF AMERICA to see what her options were and to determine, once again, the status of her modification. BANK OF AMERICA however, refused to transfer Plaintiff to any individual who could advise her of the status of the modification or advise her of the status of the Notice of Default. Therefore, Plaintiff continued to wait for a determination on her loan modification application.

18.     Finally, on or around April 6, 2013, Plaintiff was informed that she had been assigned a single point of contact, an individual named Michelle Harrold who promised to work with her through the remainder of the loan modification process. Around this same time, Plaintiff attended another NACA event, where an individual purporting to be a representative of BANK OF AMERICA told Plaintiff that she did not qualify for a modification, however, she never received written confirmation of the denial. Plaintiff advised Harrold of what transpired at the NACA event and that she had obtained a new job wherein her monthly salary had increased by approximately $2,400.00 per month. When Harrold learned of this, she advised Plaintiff to resubmit a new loan modification, even though Plaintiff had never received a written denial. Plaintiff immediately complied and returned all requested documents, including documentation of her increased income, on or around May 13, 2013 and on May 21, 2013, Plaintiff spoke with Harrold who confirmed that all documents had been received and were in the process of being reviewed. However, on May 22, 2013, Plaintiff received a denial of her modification application, dated May 20, 2013. Further, that same day, Plaintiff received a Notice of Trustee's Sale, which had been filed on May 21, 2013, indicating that her property would be sold.

19.     This lawsuit follows.

///

///

///

### FIRST CAUSE OF ACTION
**Violation of Civil Code § 2923.6**
(Against ALL Defendants)

20.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

21.     Defendants' conduct, as alleged above, constitutes violations of California Civil Code § 2923.6.

22.     In adopting the newly enacted California Homeowners Bill of Rights, the California Legislature declared the following: "[i]t is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy." Cal. Civ. Code § 2920.5, Section 1, subpart (b).

23.     Pursuant to California Civil Code § 2923.6, "[i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending…until…the mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period…has expired."   The statute further provides, at subsection (d) that "the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error."

24.     At all times relevant, Plaintiff was the owner of the Property and resided therein.

25.     Beginning in December 2011, Plaintiff began to approach Defendants regarding a loan modification for the first lien mortgage on her property.  Defendants, therefore, breached the statute when it recorded a Notice of Default against Plaintiff's property in February 2013, when Defendants had, in its possession, Plaintiff's completed loan modification application for her first lien mortgage.

26.     Further, Defendants breached this statute when, on or around May 13, 2013, Plaintiff submitted a complete application for her first lien mortgage on her Property and included with the application a documented material change in her financial circumstance, however, the application was denied merely seven days later, on May 20, 2013.  Therefore, pursuant to the Civil Code, Plaintiff had a thirty day right to appeal the denial, until June 17, 2013, before Defendants could record any notices or conduct any sales.  However, on May 21, 2013, Defendants filed a Notice of Trustee's Sale, thereby eviscerating Plaintiff's statutory right to appeal.

27.     Defendants' conduct has caused Plaintiff actual damages, including but not limited to the imminent loss of her property to foreclosure and destruction of her credit.  Plaintiff is entitled to an injunction to enjoin the violations of this Civil Code.  Further, Plaintiff is entitled to recover actual damages and attorneys' fees.  In addition, because Defendants' conduct was intentional, willful, or reckless, Plaintiff is entitled to the greater of the treble actual damages or statutory damages of fifty thousand dollars.

## SECOND CAUSE OF ACTION
### Violation of Civil Code § 2924, *et seq.*
(Against ALL Defendants)

28.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

29.     Defendants' conduct, as alleged above, also constitute acts or practices in violation of California Civil Code § 2924 *et seq.*  In fact, the entire course of Defendants' conduct alleged above is an attempt to circumvent California Civil Code § 2924 *et seq.*

30.     For example, California Civil Code § 2924 *et seq.* requires that the mortgagor be in breach of the obligation securing the mortgage before the mortgagee can invoke the power of sale.  As

Plaintiff was instructed by Defendants' agents to miss payments in order to get a loan modification, she was not in breach of the loan agreement.

31.     Further, the Notice of Default is inflated with fees and payments that Defendants waived by virtue of Civil Code § 1511.  Under California Civil Code § 1511, if Defendants do some act naturally tending to induce the plaintiff not to perform, the plaintiff's failure to perform is excused.  When this occurs, according to California Civil Code § 1512, the plaintiff is entitled to all the benefits of the contract had it been performed by both parties.  Therefore, Defendants' calculation of damages are wholly improper as all of the sums requested are sums of money that Defendants waived by virtue of its inducement that Plaintiff not perform under the loan.

32.     Moreover, under California Civil Code § 2924a(1)(C), the nature of the breach must be known to beneficiary, but herein, the nature of the breach was not in fact known by the beneficiary.  In or around February 2013, Defendants caused to be recorded a Notice of Default which contained an inaccurate amount of arrears, which was inflated with late fees and attorneys' fees.  Defendants caused this unlawful amount of arrears to be amassed through its own bad conduct.  Through its representatives, Defendants specifically instructed and induced Plaintiff to withhold her mortgage payments by assuring her that any payments withheld at its instruction would not be reported to the credit bureaus.  However, these representations turned out to be false as Defendants did count Plaintiff late for those payments it instructed Plaintiff to withhold and then initiated foreclosure proceedings based on those amounts.  As such, Defendants did not know the nature of the breach as Plaintiff was never in breach of the agreement.

33.     As a proximate result, Plaintiff has suffered, and will continue to suffer, substantial and irreparable injury from the imminent loss of her Property as a result of Defendants' violations of California Civil Code § 2924 which entitle Plaintiff to seek equity from this Court enjoining Defendants from carrying out any unlawful foreclosure sales.

### THIRD CAUSE OF ACTION
**Violation of 11 U.S.C. § 1691**
(Against Defendant BANK OF AMERICA)

34.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

35.     Defendant's conduct, as alleged above, constitutes a violation of the Equal Credit Opportunity Act, found at 15 U.S.C. 1691, *et seq.* Pursuant to that section, specifically to 15 U.S.C. 1691(d)(1), within thirty days of receipt of a credit application, which includes a loan modification application, a creditor must notify the applicant of the action taken on the application. That is, the creditor must either approve or deny the application within thirty days. This section does not specify whether the action taken be adverse or favorable, so the exception for borrowers in default in (d)(6) is not applicable to the thirty-day requirement in (d)(1), as it is in (d)(2).

36.     In July 2012, Plaintiff submitted a completed loan modification application, thereby applying for an extension of credit. However, the application remained in Defendant's underwriting department until May 2013, when Defendant purported to deny Plaintiff's application, albeit not in writing. Prior to this point, Plaintiff did not receive any notifications of the action taken on the application. Plaintiff was qualified for the extension of credit, however, she was denied credit anyways, presumably because of her national origin.

37.     Therefore, Defendant's failure to notify Plaintiff of an answer within thirty days of the receipt of a loan modification application constitutes a violation of section 1691(d)(1) of the Equal Credit Opportunity Act, regardless of Plaintiff's default status.

38.     Further, Defendant's conduct constitutes violations of 15 U.S.C. § 1691(a), which provides that a creditor may not discriminate against an individual that applies for credit based on the individual's race or national origin.

39.     In the present case, Plaintiff is an individual of Hispanic descent. Therefore, Plaintiff is part of a protected class under the Equal Credit Opportunity Act.

40.     Plaintiff applied for an extension of credit in July 2012, by completing a completed loan modification application. Plaintiff was qualified for the extension of credit, as she had abided by all of Defendant's instructions regarding how to make herself eligible for a modification, namely, obtaining rental income, discharging debt through bankruptcy, and becoming delinquent on her loan. However, despite Plaintiff's qualification for a loan modification, Plaintiff was denied the extension of credit.

41.     As a result of Defendant's violations of the Equal Credit Opportunity Act, Plaintiff is entitled to actual damages including, but not limited to, loss of money and property, losses through overcharges, incurred attorneys' fees and costs to save her home, a loss of reputation and goodwill, destruction of credit, severe emotional distress, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court.  Defendants consciously disregarded Plaintiff's rights, deliberately breaching their respective duties, showing willful misconduct, malice, fraud, wantonness, oppression, and entire want of care, thus authorizing the imposition of punitive damages.

**FOURTH CAUSE OF ACTION**
**Breach of the Covenant of Good Faith and Fair Dealing**
(Against ALL Defendants)

42.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

43.     Defendants' conduct, as alleged above, constitutes a breach of the covenant of good faith and fair dealing implied in every contract under California law.  This covenant creates an obligation in Defendants not to hinder or prevent Plaintiff's ability to perform under the contract or receive the benefit of the contract.

44.     Defendants' conduct, as alleged above, constitutes a breach of the covenant of good faith and fair dealing implied in every contract under California law.

45.     On or about June 1, 2005, Plaintiff executed a Promissory Note and Deed of Trust in favor of Countrywide Home Loans.  Subsequently, Defendants acquired the Loan and became the holder of the Note and Beneficiary under the Deed of Trust for all relevant times of the allegations herein.  Pursuant to the loan agreement, Plaintiff and Defendants had the implicit obligation not to hinder or prevent the other party's performance.  Likewise, the owner or holder of the note has an obligation to deal fairly and in good faith with Plaintiff.

46.     Pursuant to Covenant 1 of the Deed of Trust securing the loan agreement, Plaintiff promised to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note."  Plaintiff alleges that Defendants

breached the covenant of good faith and fair dealing and interfered with Plaintiff's to perform

under the contract by inducing Plaintiff to stop making payments on her mortgage loan.

47.     Until September 2011, Plaintiff substantially performed under the loan agreements,

paying her monthly payments on time and in full every month.  In fact, Plaintiff only missed

payments after she was specifically instructed to do so by Defendants.  As such, no conditions

existed that would interfere with Defendants performing under the contracts, and all conditions

necessary for Defendants to fulfill its obligations under the contracts had occurred.  Further,

because Defendants induced Plaintiff not to perform under the contract, her performance was

excused as set forth in California Civil Code §1511.   Under California Civil Code § 1511, if

Defendants do some act naturally tending to induce the plaintiff not to perform, the plaintiff's

failure to perform is excused.  When this occurs, according to California Civil Code § 1512, the

plaintiff is entitled to all the benefits of the contract had it been performed by both parties.

Therefore, Defendants' initiation of foreclosure proceedings was improper.

48.     In or around September 2011, Plaintiff, who was ready, willing and able to make

payments on the loan, was told by Defendants' representative that she needed to cease making

payments for at least sixty days in order to receive a loan modification.  Plaintiff relied on

Defendants' representations and ceased making payments, after Defendants represented to

Plaintiff that she would not suffer the loss of her property for missed payments or any negative

credit consequences.  Therefore, Plaintiff's ability to perform under the contract was interfered

with because Defendants induced Plaintiff not to perform under the contract through a series of

misrepresentations.

49.     Further, Plaintiff's rights to receive the benefits of the contract were frustrated because

Defendants interfered with her right to make incremental monthly payments in repayment of that

loan.  Defendants interfered with Plaintiff's benefit when it advised Plaintiff to stop making

payments thus ultimately denying her the right to make installment payments.

50.     As a result of Defendants' conduct, Plaintiff's credit has been detrimentally impacted, and

Plaintiff now risks the loss of her home through foreclosure, has incurred costs to save her home

and other damages, according to proof at trial.  Plaintiff alleges that this conduct was done in bad

faith and is a breach of the covenant of good faith and fair dealing implied in the loan agreement with Defendant.

## FIFTH CAUSE OF ACTION
### Promissory Estoppel
(Against ALL Defendant)

51.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

52.     Defendants are liable under the doctrine of promissory estoppel if it induces Plaintiff to reasonably rely on a promise to Plaintiff's detriment.

53.     In or around August 2011, Plaintiff contacted Defendants to inquire about a loan modification.  At that time, Plaintiff was told by Defendants' representative to stop making her loan payments for at least sixty days in order to apply for a loan modification.  Defendants represented to Plaintiff that skipping payments in pursuit of a loan modification would not negatively impact her credit or cause her to lose her property through foreclosure, as long as she was being reviewed for a loan modification.

54.     Plaintiff reasonably relied on Defendants' promises and missed payments for approximately sixty days. Thereafter, she applied for a loan modification.  However, while Plaintiff was still applying for a loan modification, Defendants initiated foreclosure proceedings against Plaintiff's Property by filing a Notice of Default and Notice of Trustee's Sale, thereby ruining Plaintiff's credit, acts which Defendants specifically stated they would not take as long as Plaintiff was in loan modification review.

55.     Plaintiff's reliance on Defendants' promises not to foreclose on her or report her account late while she was in loan modification review were reasonable and foreseeable, as Defendants were the holder of Plaintiff's loan, and ostensibly possessed the requisite authority to forego foreclosure activities while modifying the loan.

56.     Plaintiff relied upon Defendants' promises to her detriment because, but for Defendants' promises regarding credit reporting and foreclosure while her account was being reviewed for a loan modification, Plaintiff would have continued making her then current payments.

13

57.     As a result of Plaintiff's reliance, her credit has been negatively affected and her home is now in danger of being foreclosed upon.

58.     Given Defendants' promises and Plaintiff's reasonable, foreseeable and detrimental reliance upon these promises, justice requires that Defendants honor its promises while Plaintiff's modification application is being processed.

59.     Additionally, as a result of Defendants' conduct, omissions, and representations, Plaintiff has suffered and continues to suffer harm, including, but not limited to, payment of excessive fees, destruction of her credit, and severe emotional distress.

60.     Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## SIXTH CAUSE OF ACTION
### Fraud
(Against Defendant BANK OF AMERICA)

61.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

62.     Defendant's conduct, as alleged above, constitutes promises made without any intention of performing, a violation of Civil Code § 1710(4).

63.     The elements for a cause of action for fraud are: (1) a false statement of a material fact and knowledge on the part of the defendant that the statement is untrue; (2) intent on the part of the defendant to deceive; (3) justifiable reliance by the alleged victim on the statement; and (4) plaintiff suffered damages.

64.     In the case at hand, in or around August 2011, Defendant, through its representative whose name is easily ascertainable through discovery, orally represented to Plaintiff that her Property would not be lost via foreclosure and would not be counted late for missed payments while her account was being reviewed for a loan modification.  Defendant made these misrepresentations knowingly, without the intent to ever perform, in order to induce Plaintiff to withhold mortgage payments so it could thereafter foreclose on Plaintiff's property.  At the time that Defendant made these representations, Plaintiff was hesitant to fall behind in her mortgage

1  payments and was unaware that these promises were false and, in fact, only learned of the falsity

2  of the promises when Defendant began to foreclose on Plaintiff's Property, contrary to

3  Defendant's own representations. Therefore, in reliance on Defendant's statements, Plaintiff

4  withheld her regular mortgage payments, which she was, at all times, ready, willing, and able to

5  make, as a result of Defendant's statements regarding their policies on how to treat accounts that

6  were being reviewed for a loan modification.

7  65.   Plaintiff's reliance on Defendants' promises not to foreclose on her or report her account

8  late while she was in loan modification review were reasonable and foreseeable, as Defendants

9  were the holder of Plaintiff's loan, and ostensibly possessed the requisite authority to forego

10  foreclosure activities while modifying the loan.

11  66.   Plaintiff relied upon Defendants' promises to her detriment because, but for Defendants'

12  promises regarding credit reporting and foreclosure while her account was being reviewed for a

13  loan modification, Plaintiff would have continued making her then current payments.

14  67.   Plaintiff had no reason to believe that Defendant would act contrary to its promises;

15  however, as a result of Defendant's misrepresentation, Plaintiff has suffered, and continues to

16  suffer, damage to her credit, excessive late fees and charges, and the imminent loss of her

17  Property.

18  68.   Defendant is guilty of malice, fraud and/or oppression, as defined in California Civil Code

19  § 3294. Defendant's actions were malicious and willful; in conscious disregard of the rights and

20  safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such, Plaintiff is

21  entitled to recover, in addition to actual damages, punitive damages to punish Defendant and to

22  deter them from engaging in future misconduct.

23  **SEVENTH CAUSE OF ACTION**
   **Negligent Misrepresentation**

24  (Against Defendant BANK OF AMERICA)

25  69.   Plaintiff incorporates all allegations of this complaint and re-alleges them as though they

26  were fully set forth herein.

27  70.   Defendant's conduct, as alleged above, constitutes a negligent misrepresentation.

28

15

71.     California Civil Code §1710(2), sets forth the cause of action for a negligent misrepresentation.  The elements for a cause of action for a negligent misrepresentation are (1) defendant makes a representation as to a past or existing material fact, (2) defendant made the misrepresentation without any reasonable grounds for believing it to be true, (3) the representation was made with the intent to induce the plaintiff to rely upon it, (4) plaintiff was unaware of the falsity of the representation and acted in justifiable reliance on the representation, and (5) damages.

72.     Defendant is liable for negligent misrepresentation when it negligently misrepresented to Plaintiff that Defendant had a policy of not reporting a borrower's late to credit agencies or initiating foreclosure proceedings against a borrower's property, if the borrower had an active loan modification application.

73.     According to Federal pleading standards, a lender owes a duty to Plaintiff to exercise reasonable care in processing Plaintiff's loan modification and informing Plaintiff of the effects of applying for a loan modification for the following reasons: (1) loan modification is clearly intended to affect Plaintiff, as the determination on the modification would determine whether or not Plaintiff kept her home, as would an explanation of the effects of applying for a modification; (2) the potential harm to Plaintiff from misrepresentations surrounding the modification, specifically, telling Plaintiff to withhold payments, is certainly foreseeable; (3) the injury to Plaintiff for misrepresentations of this sort is certain, as missed payments would affect her loan status and place her in default;  and (4) public policy dictates the correct handling of borrowers' accounts.  Further, when Defendant made promises to Plaintiff regarding the treatment of her account, and induced detrimental reliance on these promises, Defendant created a duty of care in fulfilling these promises.

74.     In the case at hand, in or around August 2011, Defendant, through its representative whose name is easily ascertainable through discovery, orally represented to Plaintiff that her Property would not be lost via foreclosure and would not be counted late for missed payments while her account was being reviewed for a loan modification.  Defendant made these misrepresentations knowingly, without the intent to ever perform, in order to induce Plaintiff to

16

withhold mortgage payments so it could thereafter foreclose on Plaintiff's property. At the time that Defendant made these representations, Plaintiff was hesitant to fall behind in her mortgage payments and was unaware that these promises were false and, in fact, only learned of the falsity of the promises when Defendant began to foreclose on Plaintiff's Property, contrary to Defendant's own representations. Therefore, in reliance on Defendant's statements, Plaintiff withheld her regular mortgage payments, which she was, at all times, ready, willing, and able to make, as a result of Defendant's statements regarding their policies on how to treat accounts that were being reviewed for a loan modification.

75. Defendant had no reasonable grounds for believing its misrepresentations to be true since it was solely within its knowledge that they count customers late for payments, even when Defendant specifically states that it will not. However, Defendant made the misrepresentation anyways.

76. Plaintiff's reliance on Defendants' promises not to foreclose on her or report her account late while she was in loan modification review were reasonable and foreseeable, as Defendants were the holder of Plaintiff's loan, and ostensibly possessed the requisite authority to forego foreclosure activities while modifying the loan.

77. Plaintiff relied upon Defendants' promises to her detriment because, but for Defendants' promises regarding credit reporting and foreclosure while her account was being reviewed for a loan modification, Plaintiff would have continued making her then current payments.

78. Plaintiff had no reason to believe that Defendant would act contrary to its promises; however, as a result of Defendant's misrepresentation, Plaintiff has suffered, and continues to suffer, damage to her credit, excessive late fees and charges, and the imminent loss of her Property.

79. Defendant is guilty of malice, fraud and/or oppression, as defined in California Civil Code § 3294. Defendant's actions were malicious and willful; in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendant and to deter them from engaging in future misconduct.

## EIGHTH CAUSE OF ACTION
### Violation of Business and Professions Code § 17200 *et seq.*
(Against ALL Defendants)

80.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

81.     Defendants' conduct, as alleged above, constitutes unlawful, unfair, and fraudulent business practices, as defined in the California Business and Professions Code § 17200 *et seq.* As applied, § 17200 *et seq.* borrows violations from other statutes and laws.

82.     Defendants' entire course of dealing with Plaintiff was fraudulent and designed to unlawfully engineer an insurmountable default that would give Defendants the color of authority to foreclose on the Property.

83.     Likewise, Defendants' conduct, as alleged above, constitutes unlawful practices as defined in the California Business and Professions Code § 17200 *et seq.* California Business and Professions Code § 17200 *et seq.* borrows violations from other statutes and laws and makes them unlawful to engage in as a business practice. Plaintiff's California Business and Professions Code § 17200 allegations are borrowed from the following laws:

84.     Defendants' breach of the covenant of good faith and fair dealing constitutes unlawful competition under California Business and Professions Code § 17200 *et seq.*

85.     Defendants' violations of California Civil Code § 2923, *et seq.* constitutes unlawful business practices under California Business and Professions Code § 17200 *et seq.*

86.     Defendants' violations of California Civil Code § 2924, *et seq.* constitutes unlawful business practices under California Business and Professions Code § 17200 *et seq.*

87.     Defendant BANK OF AMERICA'S inducement of Plaintiff's reliance through negligent misrepresentations constitutes unlawful business practices under California Business and Professions Code § 17200 *et seq.*

88.     Defendants' inducement of Plaintiff's detrimental reliance through false promises constitutes unlawful business practices under California Business and Professions Code § 17200 *et seq.*

89.     Defendant BANK OF AMERICA'S inducement of Plaintiff's reliance through intentional misrepresentations constitutes unlawful business practices under California Business and Professions Code § 17200 *et seq.*

90.     As a result of Defendants' wrongful conduct, Plaintiff has suffered various damages and injuries, including, but not limited to, loss of money and property including but not limited to incurred attorneys' fees and costs to save her home, the loss of her home if it is sold, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression.

91.     Plaintiff seeks injunctive relief enjoining Defendants from engaging in the unfair business practices described herein.  Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1    **<u>DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES</u>**

2        WHEREFORE, Plaintiff TINA M. VASQUEZ demands a trial by jury.  Plaintiff prays for

3    a judgment and order against Defendants, as follows:

4    1.  That judgment is entered in Plaintiff's favor and against Defendants, and each of them;

5    2.  For an order requiring Defendant to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of the action;

6

7    3.  For a temporary restraining order, preliminary and permanent injunction preventing Defendant, or anyone acting in concert with them from causing the Property to be sold, assigned, transferred to a third-party, or taken by anyone or any entity;

8

9    4.  For an order stating that Defendant engaged in unfair business practices;

10   5.  For damages, disgorgement, and injunctive relief;

11   6.  For an order that Defendant repair Plaintiff's credit;

12   7.  For compensatory and statutory damages, attorneys' fees, and costs according to proof at trial;

13   8.  For exemplary damages in an amount sufficient to punish Defendant's wrongful conduct and deter future misconduct;

14

15   9.  For such other and further relief as the Court may deem just and proper.

16

17   DATED: December 3, 2013          Respectfully submitted,

18             MELLEN LAW FIRM

19

20            _/s/ Sarah Adelaars_
         Sarah Adelaars, Esq.
21            Attorney for Plaintiff
         TINA M. VASQUEZ

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF